1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9    UNITED STATES OF AMERICA,

10                    Plaintiff,

11          v.                                          CASE NO. C08-0272-JCC

12   FUNDS FROM FIRST REGIONAL BANK                     ORDER
     ACCOUNT #XXXXX1859 HELD IN THE
13   NAME OF R K COMPANY, INC., d/b/a CIGAR
     CARTEL, TOTALING $201,147.00 MORE OR
14   LESS, AND THE PROCEEDS THEREFROM,
     et al.,
15
                      Defendants.
16

17

18          This matter comes before the Court on Claimant R.K. Co., Inc, d/b/a Cigar Cartel's ("RK")

19   motion for summary judgment (Dkt. No. 24), the Government's Response (Dkt. No. 31), and RK's

20   Reply (Dkt. No. 35); and Global Trading Corporation of Tampa's ("Global") Motion for Summary

21   Judgment (Dkt. No. 35), the Government's Response (Dkt. No. 40), Global's Reply (Dkt. No. 48), and

22   RK's Second Reply (Dkt. No. 55). The Court has carefully considered these documents, their supporting

23   declarations and exhibits, and the balance of relevant materials in the case file, and has determined that

24   oral argument is not necessary. For the reasons explained below, the Court finds and rules as follows.

25

26   ORDER – 1

## I.  BACKGROUND

This is a civil forfeiture action brought by the United States (the "Government") concerning bank account funds seized and held in the name of Claimants R.K. Company, Inc. d/b/a Cigar Cartel ("RK") and Global Trading Company of Tampa, Florida ("Global"). Claimants allegedly sold and transported contraband cigarettes to The Trading Post at March Point ("March Point"), a privately-owned Indian smoke shop located on the Swinomish Indian Reservation. RK is a tobacco wholesaler licensed in the State of Washington and Global is a tobacco wholesaler licensed in the State of Florida.

Beginning in 2003, federal officials began an investigation of trafficking in contraband cigarettes in Washington State. (Compl. ¶ 5 (Dkt. No. 1 at 2).) From 2003 and continuing into 2007, unstamped contraband cigarettes were sold to undercover officers from March Point and its related businesses. (*Id.*) The investigation revealed that the unstamped contraband cigarettes were shipped to March Point from outside Washington. (*Id.*) Based upon this information, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") executed a search warrant on March Point and its related businesses. The ATF located and seized approximately 3,543,820 contraband cigarettes and seized business and financial records evidencing payment and shipment of such cigarettes. (*Id.*)

Based upon information and evidence gathered during the Government's investigation, it identified payments made by March Point (and its affiliates) for the purchase of the alleged contraband cigarettes. (*Id.* ¶ 6.) These payments were transferred or deposited into the bank accounts of various suppliers, including Claimants RK and Global. (*Id.*) Pursuant to a warrant, the Government seized funds from bank accounts in Washington, which included $201,147.00 from First Regional Bank Account #XXXXX1859, held in the name of RK, and $89,240.00 from Bank of America Account #XXXXXX6903, held in the name of Global. (*Id.* ¶¶ 8–9.) The Government alleges that these funds represent proceeds of trafficking in contraband cigarettes in violation of 18 U.S.C. § 2342 and constitute property involved in money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) & 1957. (*Id.*) The civil forfeiture action is brought pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C) & 984. (*Id.* ¶ 1.)

## II.    LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III.    ANALYSIS

Claimants RK and Global each bring a motion for summary judgment, requesting that the Court dismiss the Government's Complaint and order the return of the funds seized from their bank accounts. The claimants primarily argue that summary judgment is warranted because the cigarettes sold and transported to March Point were not "contraband" under the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341–2346 (the "CCTA"). Before addressing claimants' arguments, a general outline of the applicable statutes and regulatory regime is in order.

### A.    Applicable Statutes and Contract Provisions

The CCTA provides that it is "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). Under the CCTA,

ORDER – 3

"contraband cigarettes" means a "quantity in excess of 60,000 cigarettes which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp . . . ." *Id.* § 2341(2). The CCTA provides that contraband cigarettes are subject to seizure and forfeiture. *Id.* § 2344(c). Because the CCTA defines contraband cigarettes by reference to state law, "[a] violation of the state cigarette tax law is a predicate to a CCTA violation." *United States v. Gord*, 77 F.3d 1192, 1193 (9th Cir. 1996); *United States v. Smiskin*, 487 F.3d 1260, 1263 (9th Cir. 2007) ("whether [defendants] transported contraband cigarettes under the CCTA turns on Washington State law"). Accordingly, whether cigarettes are "contraband cigarettes" under the CCTA is determined by reference to the requirements under Washington's cigarette regulatory regime. *See Smiskin*, 487 F.3d at 1263; *United States v. Fiander*, 547 F.3d 1036, 1038–39 (9th Cir. 2008).

Under Washington law, cigarettes sold in the state must have a stamp showing either that the tax was paid or that the cigarettes were tax exempt. Wash. Rev. Code § 82.24.030(1)–(2); *Fiander*, 547 F.3d at 1038. A cigarette wholesaler, licensed under Washington state law, is permitted to possess unstamped cigarettes. Wash. Rev. Code § 82.24.250(7)(a). Retailers and consumers cannot possess unstamped cigarettes. *Id.* § 82.24.050. Cigarettes without the required stamps are deemed contraband under Washington law, and under the CCTA. *See* Wash. Admin. Code § 458-20-186 (506); *Grey Poplars Inc. v. One Million Three-Hundred Seventy-One Thousand (1,371,100) Assorted Brands of Cigarettes*, 282 F.3d 1175, 1178 (9th Cir. 2002).

In addition, Washington law provides specific restrictions on the transportation of any unstamped cigarettes in the state:

> No person other than: (a) A licensed wholesaler in the wholesaler's own vehicle; or (b) a person who has given notice to the board in advance of the commencement of transportation shall transport or cause to be transported in this state cigarettes not having the stamps affixed to the packages or containers.

Wash. Rev. Code § 82.24.250(1). Thus, unless transported in a licensed wholesaler's own vehicle,

ORDER – 4

Washington law prohibits the transportation of any unstamped cigarettes in the State without prior notice to the Washington State Liquor Control Board. *See id.* § 82.24.010 (defining "board" to mean "the liquor control board"). The Ninth Circuit has found that failure to comply with this pre-notification requirement renders unstamped cigarettes transported in the state "contraband cigarettes" under the CCTA. *Fiander*, 547 F.3d at 1039; *Smiskin*, 487 F.3d at 1263.

With some limited exceptions, these same statutes and rules apply to Indian retailers selling cigarettes in Indian Country. Indian retailers selling cigarettes to other tribal members are not subject to the state cigarette tax; however, those cigarettes must be stamped as "exempt" cigarettes. *See* Wash. Admin. Code § 458-20-192(9)(a)(ii)–(iii). Indian retailers selling cigarettes to non-tribal members are subject to the state tax, except where a tribal tax is collected in lieu of the state tax as provided in an applicable cigarette contract with the tribe. *Id.* § 458-20-186 (403); *see* Wash. Rev. Code § 43.06.455(3). Generally, an Indian tribal organization may possess unstamped cigarettes but only for the limited time period that it takes to affix the required stamps to the cigarettes, and *only if* notice is given to the Liquor Control Board prior to the transport of the unstamped cigarettes into the state. Wash. Rev. Code § 82.24.250(7)(c). Failure to provide pre-notification of the transportation of unstamped cigarettes to Indian retailers results in the treatment of those cigarettes as contraband. *Id.* § 82.24.250; Wash. Admin. Code § 458-20-186 (506).

Washington law authorizes the Governor "to enter into contracts concerning the sale of cigarettes" with certain Indian tribes. Wash. Rev. Code § 43.06.455(1). Such contracts "must provide for a tribal cigarette tax in lieu of all state cigarette taxes . . . on sales of cigarettes in Indian country by Indian retailers." *Id.* § 43.06.455(3). Although the tribe "may allow an exemption for sales to tribal members," cigarette contracts "shall provide that all cigarettes possessed or sold by a [Indian] retailer shall bear a cigarette stamp obtained by wholesalers." *Id.* § 43.06.455(3)–(4). The contracts must also "provide that the tribal cigarette tax rate be one hundred percent of the state cigarette and state and local sales and use taxes within three years of enacting the tribal tax." *Id.* § 43.06.460. Tax revenue retained by

a tribe must be used for certain statutorily defined "essential government services." *Id.* § 43.06.455(8), (14)(a).

Pursuant to the statutory authority outlined in Washington Revised Code section 43.06.455, the State of Washington entered into a cigarette tax contract (the "Contract") with the Swinomish Tribe on October 3, 2003. In accordance with the authorizing statute, the Contract with the Swinomish Tribe provides, "All cigarettes sold by the Tribal retailer shall bear a Tribal tax stamp." (Contract, Part V, ¶ 1 (Dkt. No. 25 at 6).) The Tribe may allow for an exemption from a tax for sales to tribal members, but such cigarettes must nevertheless "bear the Tribal tax stamp." (*Id.*) The Contract further provides that "[w]holesalers shall be responsible for affixing the Tribal tax stamps," and sets forth numerous other obligations on wholesalers under state law. (*Id.* ¶¶ 4–5.)

## B.    Claimant RK's Motion for Summary Judgment

RK argues that it is entitled to summary judgment dismissal because the cigarettes that it sold to March Point were not "contraband cigarettes" under the CCTA as a matter of law. (RK Mot. 2 (Dkt. No. 25).) The court disagrees. RK's narrow interpretation of "contraband cigarettes" is contrary to established Ninth Circuit precedent and the applicable statutes and regulations. The cigarettes that RK sold to March Point were "contraband cigarettes" under the CCTA because (1) the unstamped cigarettes were transported into Washington without prior notice to the State as required by law, and (2) the unstamped cigarettes were possessed and sold by March Point in violation of state law.

### 1.    Failure to Pre-Notify

Washington law prohibits the transport of unstamped cigarettes into the State unless a person has given notice to the Liquor Control Board "in advance of the commencement of transportation." Wash. Rev. Code § 82.24.250(1).[1] In the absence of advance notice of the transportation of unstamped

---

[1] Pre-notification is not required only where unstamped cigarettes are transported by a "licensed wholesaler in the wholesaler's own vehicle." Wash. Rev. Code § 82.24.250(1)(a). This exception is not applicable here because RK transported the unstamped cigarettes via common carrier and not in its "own

ORDER – 6

cigarettes into the State, "the cigarettes so transported shall be deemed contraband subject to seizure and sale." *Id.* § 82.24.250 (4). The Washington Legislature added the advance notice requirement in 1990 in what "appeared to be an emergency response to the difficulties the state experienced in enforcing its cigarette tax laws in the face of tribal sales of untaxed cigarettes to non-Indians." *Robertson v. Wa. State Liquor Control Bd.*, 10 P.3d 1079, 1084 (Wash. App. Ct. 2000) (*citing* S.B. 6451, 1990, 51st Leg., Reg. Sess. (Wa. 1990)). This pre-notification requirement is critical to Washington's cigarette tax regime because it enables the State to track the movement of unstamped cigarettes to ensure compliance with cigarette tax laws. *See Smiskin*, 487 F.3d at 1263 n.4 ("By requiring notice from tribal members before they transport unstamped cigarettes within the state, Washington is able to track cigarette imports for the purpose of enforcing the lawful tax on sales to non-Indians."). RK's undisputed failure to notify the Liquor Control Board prior to transporting, or causing the transport of, unstamped cigarettes into the State, violated Washington's pre-notification requirement.

The Ninth Circuit has unequivocally interpreted Washington's pre-notification requirement on the transport of unstamped cigarettes as a fundamental aspect of the State's cigarette tax laws, the violation of which causes such cigarettes to be "contraband" under the CCTA. *Fiander*, 547 F.3d at 1039 ("Because Fiander did not provide notice to the state prior to transporting the cigarettes, the cigarettes he transported were contraband within the meaning of the CCTA."); *Smiskin*, 487 F.3d at 1263 ("Because the Smiskins did not provide notice to the State prior to transporting unstamped cigarettes, the cigarettes were unauthorized under state law and contraband under the CCTA."); *Cf. Grey Poplars*, 282 F.3d at 1178 (explaining that "because Washington law requires that cigarettes destined for sale to Indians be preapproved by the Washington State Department of Revenue, any cigarettes without such pre-approval are considered contraband under federal law if the quantity requirements are met"); *Gord*, 77 F.3d at 1194 (finding that "the unstamped cigarettes were contraband under the CCTA unless they were

vehicle." RK's attempt to argue otherwise is without merit. *See* Wash. Admin. Code § 458-20-186 (501) (distinguishing a wholesaler's "own vehicle" from that of "a vehicle belonging to another").

ORDER – 7

preapproved by the Washington Department of Revenue and were sold to Native Americans"). Therefore, because RK failed to comply with Washington's pre-notification requirement prior to transporting unstamped cigarettes into the State, such cigarettes were "contraband cigarettes" within the meaning of the CCTA.

RK attempts to sidestep this controlling Ninth Circuit precedent by arguing that Washington "'retroceded' jurisdiction over all aspects of on-reservation cigarette sales by Indian vendors" when it entered into the Contract with the Swinomish Tribe. (Reply 2 (Dkt. No. 34).) RK contends that the Contract and "related provisions of Tribal law constitute the *entire* regulatory regime applicable to the taxation of tobacco-related commerce on the Swinomish Reservation," and therefore, the State's pre-notification requirement did not apply. (*Id.* at 2–3 (emphasis added).) However, neither the Contract nor its authorizing state statute, Wash. Rev. Code § 43.06.455, support such an argument.

The authorizing statute permits the State to enter into a cigarette tax contract with a tribe to "provide for a tribal tax in lieu of all state cigarette taxes . . . on sales of cigarettes in Indian country by *Indian retailers.*" Wash. Rev. Code § 43.06.455(3) (emphasis added). The statute explicitly limits the scope of tribal cigarette contracts "to retail sales in which *Indian retailers* make delivery and physical transfer of possession of the cigarettes from the seller to the buyer in Indian country." *Id.* § 43.06.455(2) (emphasis added). The statute further reserves state regulation over certain aspects of cigarette commerce in Indian country:

> It is the intent of the legislature that the liquor control board and the department of revenue continue the division of duties and shared authority under chapter 82.24 RCW and therefore *the liquor control board is responsible for enforcement activities that come under the terms of chapter 82.24 RCW.*

Wash. Rev. Code § 43.06.455(12) (emphasis added). Thus, under the statute, the State maintains authority to enforce certain restrictions under Chapter 82.24 of the Washington Revised Code, including the requirement that a wholesaler must notify the Liquor Control Board prior to the transportation of unstamped cigarettes into the State. *See* Wash. Rev. Code § 82.24.250(1).

ORDER – 8

The Contract between the Swinomish Tribe and the State confirms the limitations and reservations contained in the authorizing statute. The Contract expressly limits its application "to the retail sale of cigarettes *by Tribal retailers*." (Contract, Part II, ¶ 2 (Dkt. No. 25 at 5) (emphasis added).) The Contract further states, "This agreement does not alter the Liquor Control Board's responsibility under chapter 82.24 RCW." (*Id.*, Part IX, ¶ 2 .) Moreover, in recognition of the State's continued authority over cigarette wholesalers, the Contract provides that "[w]holesalers licensed by the State are subject to the requirements set forth in Title 82 RCW and any rule adopted thereunder . . . ." (*Id.*, Part VI, ¶ 1.) Thus, because the Contract does not supplant or otherwise affect the State's continued responsibility to regulate the transportation of unstamped cigarettes by wholesalers, the pre-notification requirement remains applicable and enforceable. As discussed, RK violated this requirement by failing to notify the Liquor Control Board prior to transporting unstamped cigarettes into the State. Wash. Rev. Code § 82.24.250(1), (4). Accordingly, the unstamped cigarettes sold by RK are contraband under the CCTA. *See Fiander*, 547 F.3d at 1039; *Smiskin*, 487 F.3d at 1263.

### 2. Unlawful Possession of Unstamped Cigarettes

In addition to being contraband for lack of pre-notification, the unstamped cigarettes supplied by RK were also contraband because March Point was not authorized to possess such cigarettes under state law. Under Washington law, any person who purchases unstamped cigarettes in the State must be "a person authorized . . . to possess unstamped cigarettes in this state." Wash. Rev. Code § 82.24.250(3). A person authorized to possess unstamped cigarettes is limited to: (1) a wholesaler licensed under Washington law, (2) the United States or agency thereof, or (3) any person, including a "Indian tribal organization," if stamps are affixed within a reasonable time after receipt of the cigarettes, and *only if* notice is given to the Liquor Control Board prior to the transport of the unstamped cigarettes into the state. *Id.* § 82.24.250(7). If the purchaser is not authorized to possess unstamped cigarettes, "the cigarettes so transported shall be deemed contraband subject to seizure and sale." *Id.* § 82.24.250(4).

ORDER – 9

March Point was an "Indian tribal organization,"[2] and therefore was authorized to possess unstamped cigarettes only if pre-notification was given to the Liquor Control Board and only if it affixed stamps within a reasonable time after receipt of the cigarettes. *See id.* § 82.24.250(7)(c). It is undisputed that the Liquor Control Board was not given notice prior to the transport of unstamped cigarettes to March Point. Nor did March Point affix stamps after receipt as required, and instead sold the unstamped cigarettes in violation of state law. *See* Wash. Rev. Code § 82.24.030(1)–(2); *Fiander*, 547 F.3d at 1038 ("Washington law requires cigarettes sold in the state to have a stamp showing either that the tax was paid or that the cigarettes were tax-exempt."). Because March Point was not authorized to possess unstamped cigarettes under state law, "the cigarettes so transported shall be deemed contraband." Wash. Rev. Code § 82.24.250(4). Consequently, RK's transport of unstamped cigarettes to an unauthorized entity provides another basis for finding that the unstamped cigarettes were contraband under the CCTA.

RK nonetheless argues that the sale of cigarettes by March Point, without affixing tribal tax stamps as required by the Contract, only violated tribal law. (RK Mot. 7–8 (Dkt. No. 25).) RK contends that those cigarettes cannot be contraband under the CCTA because the CCTA defines "contraband cigarettes" as those that bear no evidence of payment of applicable *state or local* cigarette taxes. (*Id.*) RK asserts that cigarettes that are non-compliant with respect to a *tribal* tax stamp cannot be contraband under the CCTA. (2nd Reply 2 (Dkt. No. 55).) RK's argument is based on the false premise that conduct that violates the Contract *only* violates tribal law and cannot also violate state or federal law.

The Contract explicitly requires that cigarette transactions must conform to the terms of the Contract in order to be exempted from enforcement of state law:

**State Agreement Regarding Compliance with State and Federal Law**
As to all *transactions that conform with the requirements of this Contract*, such transactions do not violate state law, and the State agrees that it will not assert that any such transactions violate state law for the purpose of [the CCTA] or other federal law specifically based on violation of state cigarette laws.

[2] An "Indian tribal organization" is defined to include "an Indian wholesaler or retailer that is owned by an Indian who is an enrolled tribal member." Wash. Rev. Code § 82.24.010(3).

(Contract, Part V, ¶ 6 (Dkt. No. 25 at 8) (emphasis added).) Under this express term, only those transactions that conform with all the requirements of the Contract do not violate state law for purposes of applying the CCTA. Therefore, the converse is also true—transactions that do not conform to the requirements of the Contract may violate state cigarette laws, and hence the CCTA.[3]

The Contract sets forth specific obligations on wholesalers that choose to enter into cigarette transactions on the Swinomish Reservation:

> **Wholesaler Obligation under State Law**
> Collection of the Tribal cigarette tax (unless prepaid to the stamp vendor by the Tribal retailer), *affixing of the Tribal tax stamps*, retention and production of records required by state law (in the case of state licensed wholesalers) and by this Contract and any memorandum of agreement (in the case of self-certified out-of-state or self-certified Tribal wholesalers), and compliance with other requirements in this Contract, shall be deemed to satisfy the state cigarette excise tax obligation of a wholesaler.

(Contract, Part V, ¶ 5 (Dkt. No. 25 at 8) (emphasis added).) In another paragraph, the Contract reiterates: "Wholesalers shall be responsible for affixing the Tribal tax stamps . . . ." (*Id.* ¶ 4.)

Here, it is undisputed that RK sold and shipped cigarettes to March Point without affixing the required tribal tax stamps, or any other stamp to evidence payment of applicable taxes. Because the cigarettes sold and shipped by RK to March Point were unstamped, their possession and sale violated the Contract, as well as state law. *See* Wash. Rev. Code § 82.24.030(1)–(2); *Fiander*, 547 F.3d at 1038. March Point possessed and sold the unstamped cigarettes in violation of Washington's cigarette laws, and therefore such cigarettes were contraband under the CCTA. RK has therefore failed to meet its burden of demonstrating that the unstamped cigarettes it sold and transported to March Point were not contraband under the CCTA.

### C. Claimant Global's Motion for Summary Judgment

Global argues that it is entitled to summary judgment ordering the return of its seized funds because (1) the cigarettes it sold to March Point were not contraband, (2) even if the cigarettes were

---

[3] As discussed above, transactions not regulated by the Contract or outside its scope, may also violate state cigarette laws.

contraband, it is entitled to return of the seized funds pursuant to the "innocent owner" defense, and (3) even if the funds are subject to forfeiture, only the profits from its sales are subject to forfeiture as "proceeds." (Global Mot. 1–2 (Dkt. No. 35).)

### 1. Contraband Cigarettes

Global's first ground for summary judgment is based, in part, on its contention that title to the unstamped cigarettes it sold apparently transferred to March Point in Florida because Global's invoices stated "Freight is FOB Tampa Florida."[4] (*Id.* at 7; Global Invoices (Dkt. No. 36-2 at 8–11).) Global contends that because it is licensed by the State of Florida to possess unstamped cigarettes, and because title to the unstamped cigarettes transferred to March Point in Florida, the cigarettes were not contraband when Global possessed and sold them. (Global Mot. 7 (Dkt. No. 35).) The Government, however, points out that the copies of Global's invoices recovered during the seizure at March Point and submitted by Global to Florida regulators, do not contain the notation "Freight is FOB Tampa Florida." (Resp. 2–4 (Dkt. No. 40).) In its Reply, Global's president offers an explanation as to why the other copies of the invoices do not contain the FOB notation, and he states that Global "considered that the goods belonged to the buyer after they left our warehouse." (2nd Tabshe Aff. ¶ 18 (Dkt. No. 49 at 5).) Global contends that the Government has offered insufficient facts to support a finding that title to the goods passed upon delivery, as opposed to shipment. (Reply 4 (Dkt. No. 48).)

In determining whether an issue of fact exists on Global's motion for summary judgment, the Court must view all evidence in the light most favorable to the Government and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 248–50. (1986). The evidence before the Court, viewed in this light, demonstrates that a factual dispute remains as to when title to the unstamped cigarettes sold

---

[4] Under the Uniform Commercial Code, the term "F.O.B." (which means "free on board") is a delivery term. U.C.C. § 2-319(1). When the term is FOB place of shipment, the seller must "bear the expense and risk of putting them into the possession of the carrier," whereas when the term is FOB place of destination, the seller must "at his own expense and risk transport the goods" to the place of destination. *Id.* § 2-319(1)(a) & (b).

ORDER – 12

by Global actually passed to March Point. The Uniform Commercial Code, which has been adopted by both Florida and Washington, contains a specific section governing the "Passing of Title" for the sale of goods. U.C.C. § 2-401; *see* Fla. Stat. § 672.401; Wash. Rev. Code § 62A.2-401. That section provides:

> (2) Unless otherwise *explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, . . .
>
> > (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but
> >
> > (b) if the contract requires delivery at destination, title passes on tender there.

U.C.C. § 401(2) (emphasis added). Thus, if there is no explicit agreement, title passes to the buyer when the seller "completes his performance with reference to the physical delivery of the goods." *Id.* The point at which the seller completes performance depends on the terms of the delivery contract. *See id.*

Here, there is no explicit agreement between the parties as to when title to the unstamped cigarettes would pass. Nor is there a delivery contract that specifies whether Global's performance was complete upon shipment or upon delivery. Global's copies of the relevant invoices, which include the FOB place of shipment notation, indicate that title passed to March Point in Florida. (Global Invoices (Dkt. No. 36-2 at 8–11).) However, March Point's copies of those same invoices contain no such notation and instead indicate an intention that title would pass upon delivery.[5] (March Point Invoices (Dkt. No. 41-3 at 2–36).) The only term included on March Point's invoices is "Due on receipt," which by itself, suggests that Global's performance would be complete, and full payment by March Point would be due, upon delivery of the cigarettes in Washington. (*See id.*) In addition, the fact that Global

---

[5] The Court has no reason to doubt Global's explanation as to the procedures that caused the omission of the FOB notation in the copies of the invoices sent to March Point and Florida regulators. This explanation does not, of course, change the fact that March Point's copy of the invoice did not contain any FOB term dictating when title would pass. Moreover, the mere fact that Global's copy of the invoices contains the FOB place of shipment notation does not demonstrate an *agreement by the parties* as to when title would pass because March Point's copy of those same invoices contained no such term.

ORDER – 13

apparently was responsible for, and paid the costs of, shipping the cigarettes further indicates that Global's performance required delivery to March Point. (*See* Global Freight Payment (Dkt. No. 43-2 at 8).) Where the seller bears the risk and *expense of transport*, the delivery contract is generally FOB place of destination. U.C.C. § 2-319(1)(b). If Global was required to deliver the cigarettes to March Point, then title passed upon delivery in Washington. *See id.* § 2-401(b) (explaining that "if the contract requires delivery at destination, title passes on tender there"). Because the copies of the invoices held by March Point and Global contain materially different terms with respect to the passage of title, the Court cannot conclude that title passed at the place of shipment as a matter of law.[6]

The Ninth Circuit has emphasized that whether cigarettes are contraband under the CCTA "turns on Washington State law." *Smiskin*, 487 F.3d at 1263; *see Gord*, 77 F.3d at 1193 ("A violation of the state cigarette tax law is a predicate to a CCTA violation."). Washington law requires a wholesaler to notify the Liquor Control Board before transporting, or causing the transport of, unstamped cigarettes into the State. Wash. Rev. Code § 82.24.250(1). In the absence of proper notice, or if the purchaser of the cigarettes is not authorized to possess unstamped cigarettes, the cigarettes so transported shall be deemed contraband subject to seizure. *Id.* § 82.24.250(4). Accordingly, and as discussed above with respect to RK, sufficient evidence exists that the cigarettes sold by Global were contraband under the CCTA because such cigarettes were transported into Washington without prior notice to the State and the cigarettes were subsequently possessed and sold by March Point in violation of state law.

Global argues that it lacked the requisite *mens rea* to violate the CCTA because it did not

---

[6] Even assuming, *arguendo*, that title to the unstamped cigarettes passed to the buyer upon shipment from Florida, the Court is not convinced that this technical distinction would necessarily immunize Global's conduct. Notably, Washington law provides that no person shall "transport or *cause to be transported*" unstamped cigarettes into the State without pre-notification. Wash. Rev. Code § 82.24.250(1) (emphasis added). This language represents an intent to prevent wholesalers from circumnavigating the pre-notification requirement by having title pass to the buyer before unstamped cigarettes enter the State. Otherwise, out-of-state wholesalers could operate in flagrant disregard for Washington cigarette laws by merely including the term "FOB place of shipment" for deliveries of unstamped cigarettes.

ORDER – 14

knowingly ship contraband cigarettes. (Reply 5–7 (Dkt. No. 48).) Similarly, Global argues that its ignorance of the law is a valid defense under the facts of this case. (*Id.* at 7–10.) The CCTA makes it unlawful for persons to "knowingly . . . ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342. The Ninth Circuit has explained that this provision only requires "willfullness" and does not require "knowledge that the actions engaged in violate the law." *United States v. Baker*, 63 F.3d 1478, 1491 (9th Cir. 1995). The CCTA's requirement that the conduct be willful "generally means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." *Id.* (*quoting United States v. Scanio*, 900 F.2d 484, 489 (2d Cir. 1990)). Because there is no dispute that Global knew that it was shipping unstamped cigarettes to Washington and knew that it did so without notifying the State, it acted willfully regardless of whether it also knew the legal consequences of such conduct. *See id.*

The Ninth Circuit has recognized two limited exceptions to the general rule that ignorance of the law is no excuse. *Id.* Global contends that this case fits the first exception, which "applies only to a defendant who is reasonably mistaken as to the *factual* events which form the basis for his prosecution." *Id.* Global asserts that it "reasonably believed that the cigarettes it sold were not contraband and reasonably believed that its buyers were entitled to purchase the cigarettes." (Global Mot. 7 (Dkt. No. 48).) In *Baker*, the defendants sought reversal of their convictions under the CCTA, arguing that they did not know their transportation of unstamped cigarettes into Washington, without preapproval, violated the law. 63 F.3d at 1491. The court rejected application of the first exception in this context, explaining that it "would apply if the defendants asserted reasonable grounds to believe that the tax had been paid, but it does not extend to their assertion that the government was required to prove they knew a tax was due." *Id.* at 1492. Here, like the defendants in *Baker*, Global was not reasonably mistaken as to a *factual* event, such as whether the tax was paid on the cigarettes. Instead, Global apparently did not know that its transportation of unstamped cigarettes to March Point, without pre-notification, would violate state laws and render such cigarettes "contraband" under the CCTA. Global's ignorance of the law is therefore no

ORDER – 15

excuse in this context.[7]

## 2. Innocent Owner Defense

Global concedes that if the funds paid to it by March Point were proceeds of "specified unlawful activity" conducted by March Point, such proceeds may be subject to forfeiture under 18 U.S.C. §§ 981 and 983. (Global Mot. 8 (Dkt. No. 35).) Nevertheless, Global argues that the seized funds must be returned to it pursuant the "innocent owner" defense in 18 U.S.C. § 983(d). (*Id.*) That section provides: "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). Depending on when Global's interest in the forfeitable funds arose, it may qualify as an innocent owner only if it demonstrates either that it (1) "did not know of the conduct giving rise to forfeiture," or (2) was a seller for value and "did not know and was reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 983(d)(2)–(3). In asserting this affirmative defense, Global bears the burden of proving its innocent owner status by a preponderance of the evidence. *Id.* § 983(d)(1). Regardless of exactly when Global first acquired an interest in the funds representing payment for the contraband cigarettes, Global has not met its burden of proving it was an innocent owner under either of the above tests.

First, Global has not shown by a preponderance of the evidence that it "did not know of the *conduct* giving rise to the forfeiture." *Id.* § 983(d)(2) (emphasis added). The conduct giving rise to forfeiture included Global's sale and transport, without pre-notification, of unstamped cigarettes into Washington. This conduct rendered the unstamped cigarettes contraband and subject to seizure under state law and the CCTA, thereby making Global's funds derived therefrom subject to forfeiture as

---

[7] Global also makes the interesting argument that Washington's pre-notification requirement is somehow preempted (via conflict preemption) by the Jenkins Act, 15 U.S.C. §§ 375, *et seq*. (Reply 10–12 (Dkt. No. 48).) Because this issue was not even mentioned in Global's motion for summary judgment, it has not been properly briefed and is not properly before the Court. Nonetheless, the Court fails to see how Washington Revised Code § 82.24.250 is in actual conflict with the Jenkins Act. *See Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d 976, 982 (9th Cir. 2008) (implied preemption requires an actual conflict).

ORDER – 16

"proceeds traceable to . . . any offense constituting 'specified unlawful activity.'" *See* 18 U.S.C. § 981(a)(1)(C).[8] There is no dispute that Global was aware of its sale and shipment of unstamped cigarettes to March Point. Global has not, therefore, sufficiently demonstrated its status as an innocent owner under 18 U.S.C. § 983(d)(2).

Nor has Global shown, by a preponderance of the evidence, that it "did not know and was *reasonably without cause to believe* that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3) (emphasis added). In *Baker*, the Ninth Circuit found that because the defendants were involved in the transport of unstamped and unapproved cigarettes into Washington, the cigarettes were contraband under state and federal law. 63 F.3d at 1488. The court explained that because cigarettes are "likely to be regulated" when possessed in large quantities, "knowledge of cigarette taxing requirements can be *presumed*" among those dealing in large quantities of cigarettes. *Id.* at 1492 (emphasis added). *Baker* therefore put cigarette wholesalers on notice of their obligation to know the laws regulating cigarette taxation and interstate shipments of large quantities of cigarettes. *See id.*; *see also United States v. Mahoney-Meyer*, No. 07-30430, 2008 U.S. App. LEXIS 20338, at *4 (9th Cir. Aug 28, 2008) (unpublished) (explaining that "*Baker* put defendants on notice that the CCTA applies to Indians, that it classifies unapproved, unstamped cigarettes as contraband, that federal law does not preempt Washington's cigarette tax scheme, and that dealers' knowledge of cigarette taxing requirements can be presumed.") (internal quotation and citation omitted). Here, Global knew that March Point was an Indian retailer and was selling unstamped cigarettes. (*See* Tabshe Aff. ¶ 6 (Dkt. No. 36 at 2).) In light of *Baker*, Global's mere reliance on March Point's assertion that it was entitled to purchase and sell unstamped cigarettes was not reasonable under the circumstances. Global has not established innocent owner status under 18 U.S.C. § 983(d)(3).

---

[8] Trafficking in contraband cigarettes in violation of the CCTA is included under the definition of "specified unlawful activity." *See* 18 U.S.C. §§ 1956(c)(7) & 1961(1).

ORDER – 17

### 3. "Proceeds" Subject to Forfeiture

Finally, Global contends that even if its funds are subject to forfeiture, only its profits in the cigarettes sold are "proceeds" subject to forfeiture. (Global Mot. 9 (Dkt. No. 35).) Pursuant to the federal civil forfeiture statute, any property "which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)" is subject to forfeiture to the United States. 18 U.S.C. § 981(a)(1)(C). A tortuous journey through the federal code reveals that "specified unlawful activity" includes trafficking in contraband cigarettes in violation of the CCTA. *See id.* § 1956(c)(7) (defining "specified unlawful activity as "any act or activity constituting an offense listed in section 1961(a) of this title . . . ."); *id.* § 1961(1) (listing trafficking in contraband cigarettes under the CCTA as a covered offense). Thus, the funds Global derived from the sale and transport of contraband cigarettes are subject to forfeiture under 18 U.S.C. 981 as "proceeds" traceable to a "specified unlawful activity," namely trafficking in contraband cigarettes.

In *United States v. Santos*, the Supreme Court held, in a fractured analysis, that the term "proceeds" as used in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), means "profits" and not "receipts," at least where the specified unlawful activity is the operation of an illegal gambling business. 128 S. Ct. 2020, 2025–26 (plurality op.); *id.* at 2033 (Stevens, J., concurring in the judgment). There, unlike here, the term "proceeds" was not defined in the relevant statute. *See id.* at 2024 ("The federal money-laundering statute does not define 'proceeds.'").

The civil forfeiture statute provides two different definitions of "proceeds," the application of which depends on the type of activity giving rise to the forfeiture:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.
>
> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the

ORDER – 18

goods or services.

18 U.S.C. § 981(a)(2). Accordingly, if this case involves "illegal goods, illegal services, [or] unlawful activities," then Global's *gross receipts* are subject to forfeiture as "proceeds"; if, however, this case involves "lawful goods or lawful services that are sold or provided in an illegal manner," then Global's *profits* are subject to forfeiture. *See id.*; *Santos*, 128 S. Ct. at 2024 (recognizing that "proceeds" means "receipts" under 18 U.S.C. § 981(a)(2)(A) and "profits" under § 981(a)(2)(B)).

The forfeiture of Global's funds in this case is predicated upon a violation of the CCTA. Under the section titled "*Unlawful Acts*," the CCTA provides, "It shall be *unlawful* for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342 (emphasis added). The explicit language of the CCTA specifies that trafficking in contraband cigarettes is considered unlawful activity. Global's conduct in selling and transporting contraband cigarettes in violation of the CCTA therefore falls into the category of "cases involving . . . unlawful activities" in which gross receipts are subject to forfeiture as "proceeds." *See id.* § 981(a)(2)(A). This case also involves the sale and transport of "illegal goods" because the cigarettes or "goods" that Global sold and transported to Washington were unlawful under state law. *See* Wash. Rev. Code § 82.24.250(4) ("In the absence of the notice of transportation . . . or if the purchaser or consignee is not a person authorized . . . to possess unstamped cigarettes, the cigarettes so transported shall be deemed contraband . . . ."). Beyond the definition of "contraband cigarettes" in the CCTA, the term "contraband" is generally defined as "goods that are *unlawful* to import, export, or possess." Black's Law Dictionary 341 (8th ed.) (emphasis added). Global's conduct in selling and transporting contraband cigarettes involves "unlawful activities" or "illegal goods," and therefore Global has failed to demonstrate that its gross receipts are not subject to forfeiture as "proceeds" under 18 U.S.C. § 981(a)(2)(A).

ORDER – 19

**III.    CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Claimant RK's Motion for Summary Judgment (Dkt. No. 24) and DENIES Claimant Global's Motion for Summary Judgment (Dkt. No. 35).

SO ORDERED this 11th  day of March, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 20